# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:05cv264

| | | |
|---|---|---|
| JULIA STOCKTON, | ) | |
| | ) | |
| Plaintiff, | ) | **AMENDED** |
| | ) | **MEMORANDUM AND** |
| Vs. | ) | **RECOMMENDATION** |
| | ) | |
| PATHWAYS AREA MH/DD/AA AUTHORITY, A LOCAL MANAGEMENT ENTITY; GASTON-LINCOLN-CLEVELAND AREA MENTAL HEALTH/ DEVELOPMENTAL DISABILITIES/SUBSTANCE ABUSE AUTHORITY d/b/a PATHWAYS, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendants' Motion for Summary Judgment (#13). Defendants filed their motion and supporting memorandum of law on May 31, 2006, making plaintiff's response due to be filed not later than June 19, 2006. L.R. 7.1(B). Plaintiff is represented by counsel. Having carefully considered defendants' motion, their brief, and their supporting evidentiary materials, the undersigned enters the following findings, conclusions, and recommendation that summary judgment be granted in favor of defendants and against plaintiff.

# FINDINGS AND CONCLUSIONS

## I. Background

In this action, plaintiff contends that she was discriminated against based on her gender in hiring decisions made by a public mental health care provider serving the Gaston, Lincoln, and Cleveland County area. Plaintiff asserts claims of gender discrimination under Title VII of the Civil Rights Act of 1964, and a claim under the *Equal Pay Act*.

It is plaintiff's contention that defendants discriminated against her based on her gender as to two positions: a second shift position as an ES Clinician II with Emergency Services, that was eventually filled by a woman; and an ES Clinician II with Emergency Services weekend position that was filled by the only timely applicant for the position, a black male. As discussed below, plaintiff has brought her claims even though she (1) failed to apply for the positions before they closed and (2) she lacked the required professional license. While alleging gender discrimination, the undisputed evidence reveals that the person who made the hiring decisions for the facility was a woman, that such decision maker had hired women 85 percent of the time, and that she filled one of the positions of which plaintiff complains with a woman who she allowed to internally transfer.

## II. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Defendants have met this burden. See "Defendant's Index of Documents Filed in Support of Defendants' Motion for Summary

Judgment" (#15). Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). Plaintiff has failed to respond in any way.

To avoid summary judgment, there must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v.

Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252. In this case, the evidence is clear that plaintiff has no evidence to support her claims, and defendants are entitled to judgment as a matter of law.

### III. Discussion

#### A. Undisputed Facts

The following factual summary has been drawn from the pleadings as well as the unrebutted evidentiary materials submitted by defendants. Defendants will hereinafter be referred to in the collective as Pathways.

Pathways is a local management entity created by the State of North Carolina. Complaint, at ¶ 6. Pathways provides mental health services to the residents of Gaston, Cleveland, and Lincoln Counties. Id. Plaintiff alleges that she had previously been employed by Pathways through Kings Mountain Hospital. Complaint, at ¶ 9. On or about August 31, 2004, plaintiff's employment at Kings Mountain Hospital, pursuant to a contract with Pathways, was terminated at about the same time Kings Mountain Hospital severed its

contract with Pathways.[1] Id. In her previous work with Pathways, plaintiff worked telephone crisis intervention as well as other duties. Id. She alleges that she was a duly qualified "mental health profession assisting Defendants with regard to emergency services, and also held her school counselor certification." Complaint, at ¶ 10. Plaintiff alleged that she has a bachelors degree in sociology and a master's degree in agency counseling. Id.

In September 2004, plaintiff alleges that she noticed a posting on Pathways' website for a position: "Crisis Emergency Services On-Call Counselor." Complaint, at ¶ 12; Julia Stockton Depo., at 37-38. At her deposition, she testified that she viewed postings for such position as a second shift and as a weekend shift. Stockton Depo., at 37-38. Plaintiff alleges that she submitted an application for the positions on September 27, 2004. Id. It is undisputed that such posting included a closing date of September 15, 2004, and instructions that applications be mailed to Ann Young at a physical address. Ann Young Aff., at ¶ 11. Ann young is the Human Resources Manager for defendant. While plaintiff alleges that she mailed her application September 27, 2004, it was not received until November 2, 2004. Young Aff., at ¶ 15. Apparently, the defendant changed addresses in 2004, and such change could have resulted in the delay.

It is undisputed that in October 2004, Pathways hired from outside the facility a black male for the weekend position and hired from within a female for the second shift position,

---

[1] Plaintiff's previous employment at Kings Mountain Hospital or termination is not at issue in this case.

all two-to-three weeks before Pathways received plaintiff's application. Young Aff., at ¶¶ 13-15. Pathways routinely date stamps applications it receives for positions, and plaintiff's application was date stamped November 2, 2004. Denise Whitener Aff., at ¶ 3; Young Aff., at ¶ 7.

It is undisputed that Pathways received only one application prior to the closing date for the weekend shift. The application was from a black male with over eight years of clinical social work experience, a license in clinical social work and psychology, and a veteran of the United States Air Force. Young Aff., at ¶ 13. Upon receipt of the application, Young screened the application, determined the applicant met the qualifications, and sent the application on to review panel. Id. The review panel interviewed such applicant on October 5, 2004, and returned a recommendation to Young that the applicant be hired. Id. Such applicant was hired October 14, 2004. Id.

As to the second shift position, Pathways received no applications prior to the closing date. Young Aff., at ¶ 14. A female counselor at Pathways thereafter requested a transfer to the second shift position for personal reasons, Young Aff., at ¶ 14, a request which Pathways accommodated. Id. As with the applicant for the weekend shift, this female counselor was a licensed social worker. Id.

It is undisputed that the posting for each position contained the following: "SPECIAL REQUIREMENTS: L.C.S.W.-Licensed Counselor - or Licensed Psychologist." Defendants' Exs. A & B; see also Young Aff., at ¶ 11.

It is also undisputed that Young has been the Human Resources manager at Pathways since 1999, and has in that time hired 250-300 people. Young Aff., at ¶¶ 2-3. Of those hires, 85 percent have been women. Id., at ¶ 4. Plaintiff has no personal knowledge or evidence to dispute such figures. Stockton Depo., at 59.

It is also undisputed that plaintiff contacted an employee of Pathways prior to applying, Adam Kurtzman. Kurtzman never saw plaintiff's application, but served on the review panel that recommended the black male applicant for hire. Adam Kurtzman Aff., at ¶ 6. In his job with Pathways, Kurtzman supervises seven employees, six of whom are women, all of whom he recommended for hire. Id., at ¶ 5. Plaintiff testified that she knows Kurtzman and has no reason to believe that he discriminates against women. Stockton Depo., at 68.

Plaintiff testified that the women who received the second shift position was very qualified. Stockton Depo., at 71. However, she testified that she was discriminated against based on her gender when Pathways awarded the weekend shift to the black male applicant. Id., at 38 & 40. Plaintiff also testified that when Pathways received her application in November 2004, it should have fired the black male employee and hired her. Id., at 71-72.

**B.     Summary Judgment as to Plaintiff's Title VII Claim**

This claim arises under Title VII of the Civil Rights Act of 1964, as amended, 42, United States Code, Sections 2000e, et seq. Plaintiff claims that she was discriminated against in employment by Pathways based on her gender. This court has jurisdiction over

plaintiff's claims. 28 U.S.C. § 1343; 42 U.S.C. § 2000e(5)(f)(3). Pathways has moved for summary judgment, contending that plaintiff cannot present evidence of a *prima facie* case of gender discrimination.

### 1. Establishing a *Prima Facie* Case of Gender Discrimination

A plaintiff may establish a case of gender discrimination through direct evidence of discrimination or through the cumulative effect of indirect evidence of the employer's motivation. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 240 (4th Cir. 1982). Alternatively, a plaintiff may attempt to establish a *prima facie* case of gender discrimination through use of a "McDonnell-Douglas scheme." Id.

If a plaintiff can establish such a *prima facie* case, the burden shifts to the employer to show some legitimate, nondiscriminatory reason for the employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Upon such a showing, the burden shifts back, and the employee has the burden of proof to show by a preponderance of the evidence that the legitimate reasons offered by the employer were not true reasons, but were pretext. Id. In the instant matter, plaintiff has presented no evidence and a close review of the evidence submitted by Pathways reveals that there is no direct evidence of gender discrimination.

Reading all the pleadings in a light most favorable to plaintiff, it appears that she has no direct evidence of gender discrimination; the "mixed-motive" standard under Fuller v. Phipps, 67 F.3d 1137, 1141 (4th Cir. 1995), would be inapplicable; and analysis of this claim

8

as a "pretext" case under the burden-shifting scheme of McDonnell-Douglas v. Green, 411 U.S. 792, 802 (1973), is appropriate.

### 2. Shifting Burdens McDonnell-Douglas

In the context of gender discrimination in initial hiring decisions, to make out a *prima facie* case, plaintiff would have to show that (1) she is a member of a protected class, (2) she was qualified for the positions for which she applied; (3) she was not hired; and (4) that after she was rejected, the position remained open and the employer continued to seek applications from persons with the plaintiff's qualifications. McDonnell-Douglas, supra, at 802.

If plaintiff had presented evidence upon which a reasonable inference could arise in her favor on each element, then she would establish a *prima facie* case of gender discrimination. At such point, the burden would then shift to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action it took. If defendant met that burden, then the presumption of discrimination would "drop from the case," and plaintiff would be required ultimately to show that the reason given by defendant was pretextual and that the adverse action was the result of discriminatory intent. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).

### 3. Establishing a *Prima Facie* Case

Plaintiff clearly has alleged and proved the first element of a *prima facie* case, that she is a woman and therefore a member of a protected class. Complaint, at ¶ 5.

The second element requires that plaintiff demonstrate that she was qualified for the

positions she sought. Considering the evidence in a light most favorable to plaintiff, she has shown that she has an undergraduate degree in sociology, a master's degree in agency counseling, and holds a certificate as a school counselor. Complaint, at ¶ 10. It is, however, undisputed that the jobs she applied for specified and required the applicant to be a "L.C.S.W.-Licensed Counselor - or Licensed Psychologist." Defendants' Exs. A & B. Plaintiff has neither alleged nor proved that she held any of the required licenses. Plaintiff has, therefore, presented no evidence upon which she can satisfy her burden as to the second element.

Even if this court were to assume that plaintiff was qualified and that she was not hired despite those qualifications, it is equally undisputed that when pathways received her application, both positions had already been filled. Thus, plaintiff cannot satisfy the fourth element of a *prima facie* case in that it would be impossible for plaintiff to show that Pathways continued to seek applicants with plaintiff's qualifications after she had been rejected. The undersigned will, therefore, recommend summary judgment in favor of Pathways and against plaintiff inasmuch as she cannot show a *prima facie* case of gender discrimination under Title VII.

### 4. Pathways Legitimate, Non-Discriminatory Reasons for Not Hiring Plaintiff

While the court's analysis could stop with the *prima facie* case, Pathways has gone further and argued that it has an articulated, non-discriminatory reason for its decision to transfer a woman to one of the positions and a black male to the other. Texas Dept. of

Community Affairs v. Burdine, supra. While making the argument, a search of Pathways' brief on this point does not disclose their non-discriminatory reason. See Memorandum in Support, at 10-13. Reading the entirety of the brief, it would appear that their legitimate, non-discriminatory reason for not hiring plaintiff was that they had not received her application before th positions were filled.

Assuming that this was, at least, a threshold reason for not hiring plaintiff, the burden would have then shifted back to plaintiff to show that such reason was merely pretext for gender discrimination. While plaintiff testified that the employee who transferred to the second shift position told her that Kurtzman had told her that he received plaintiff's application a "few days" before October 24, 2004, Stockton Depo., at 40, 58-59, even if such testimony could overcome the hearsay problems it is insufficient to rebut Pathways' legitimate reason inasmuch as it is undisputed that both positions were filled at least one week before such alleged receipt. Young Aff., at ¶ 15.

### 5. Conclusion as to Plaintiff's Title VII Claim

What the court is left with are plaintiff's allegations and testimony in which she speculates that pathways did not hire her because of her gender. Speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. Lovelace v. Sherwin-Williams, supra, at 241-42. Speculative assertions that a defendant's motivation was gender based is not enough to withstand summary judgment, Goldberg v. B. Green and Co., 836 F.2d 845, 848

(4th Cir. 1988); and conclusory statements will not satisfy plaintiff's burden in responding to the Motion for Summary Judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir. 1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). Drawing all reasonable inferences in plaintiff's favor, she cannot neither establish a *prima facie* case nor rebut Pathways legitimate reason for not hiring her. For the reasons discussed above, the undersigned will respectfully recommend that defendant's Motion for Summary Judgment be allowed and judgment entered in defendant's favor on plaintiff's Title VII claim.

**C.     Summary Judgment as to Equal Pay Act**

In addition to her claim under Title VII, plaintiff has also asserted a claim under the Equal Pay Act.

> A plaintiff may assert claims based on unequal pay for equal work under both the Equal Pay Act and Title VII. Plaintiffs bringing claims under the Equal Pay Act or Title VII must establish a prima facie case of discrimination. Under the Equal Pay Act, the plaintiff must show that an employer has paid different wages to employees of opposite sexes for equal work in jobs which require equal skill, effort and responsibility and which are performed under similar working conditions.

Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994). While the *Equal Pay Act* adds an additional element of proof - - that the employer paid different wages for equal work to opposite genders - - the threshold showing that plaintiff must make under the *Equal Pay Act* is the same as that under Title VII, to wit, that gender somehow affected the

hiring process at Pathways. For the reasons discussed above, plaintiff has not and apparently cannot make such a showing, and the undersigned will respectfully recommend that defendant's Motion for Summary Judgment be allowed and judgment entered in defendant's favor on plaintiff's *Equal Pay Act* claim.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Motion for Summary Judgment (#13) be **GRANTED**, that judgment be entered in favor of defendants and against plaintiff, and that this action be **DISMISSED** with prejudice**.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: June 30, 2006

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge